KAREN VAN ZANT, Plaintiff-Appellant,

v.

KLM ROYAL DUTCH AIRLINES; and Kenneth Hasan King, Defendants–Appellees.

No. 72, Docket 95–7032.

United States Court of Appeals, Second Circuit.

Argued Sept. 7, 1995.

Decided March 28, 1996.

**710**

L. Kevin Sheridan, New York City (Philip J. Dinhofer, Jesse C. Sable, Sable, Gold & Dinhofer, New York City, of counsel), for Plaintiff–Appellant.

Michael J. Dimattia, New York City (Judith A. Hagley, Ross & Hardies, New York City, of counsel), for Defendants–Appellees.

Before: KEARSE, JACOBS, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Karen Van Zant appeals from the district court's grant of summary judgment in favor of her former employer, KLM Royal Dutch Airlines ("KLM"), dismissing her complaint, which alleged unlawful sex discrimination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and under New York's Human Rights Law, N.Y. Exec. Law § 290 et seq. Van Zant's complaint alleged that KLM fostered a hostile work environment arising from her sexual harassment by a co-worker and then retaliated against her for complaining. The district court (Constance Baker Motley, *Judge*) found (1) that Van Zant's federal cause of action, in major part, occurred prior to October 9, 1991, and was therefore time barred under the rules governing Title VII litigation, and (2) that she had in any event failed to show that there was a genuine issue for trial. We agree with the district court on both points and therefore affirm the judgment below.

### Background

Because summary judgment was granted against Van Zant, we consider the evidence in the light most favorable to her. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202–03 (2d Cir.1995). Van Zant began work for KLM at its Elmsford, New York, office in August 1987, and in June 1988 was transferred to the cargo division, where she became a junior accountant. Her early performance reviews were generally positive. In 1990, she applied for a promotion to become a cargo accounting supervisor, but the job went instead to a co-worker, Emily Browne, who became Van Zant's immediate supervisor. In June 1991, Van Zant and other colleagues were upgraded to senior accountants.

### I. Harassment/Hostile Work Environment

Around the end of 1989, KLM hired Hasan King as a mailroom clerk. This job required him to move about the company's facility delivering mail and packages. King had a penchant for socializing and for making inappropriate comments and gestures to female employees. According to Van Zant, King started flirting with her in late 1990, and

became more aggressive during the summer of 1991, making lewd sexual remarks to her. Van Zant's supervisor, Browne, was apparently aware of King's behavior toward her, but Van Zant did not ask Browne to take action and none was taken.

On Saturday, August 24, 1991, Van Zant came into the office on her own time to work on a project that was to be evaluated as part of her application for promotion. Early in the afternoon, King made a vulgar pass at Van Zant and exposed himself to her. The first thing Monday morning, August 26, Van Zant told her supervisor Browne what had happened. Browne took the complaint seriously and reported the incident to Terry Mulchahey, KLM's personnel director. In response, within a day and a half, Mulchahey questioned Van Zant, another employee with whom Van Zant had spoken immediately after the incident, and King.

The next day, August 27, 1991, Mulchahey informed Van Zant that King had denied exposing himself and that it would be necessary to hold a grievance committee meeting to resolve the contradiction.

On August 28, apparently frustrated that KLM had not yet taken action against King, Van Zant and Browne went to see Gene Jones, a company vice-president. At this meeting, according to Van Zant, the following occurred: Jones expressed skepticism about Van Zant's charges and said that women often lie about being raped. Mulchahey, who was also at the meeting, advised them that King had complained that a grievance committee hearing would be unfair to him because he had seen Van Zant and Browne conferring with one of the grievance committee members. Accordingly, Mulchahey said the grievance committee would not be convened at that time. Mulchahey then informed Van Zant that KLM could not keep King away from her work area, presumably because his duties included delivering the mail. Van Zant then said that she would go to the police; Jones expressed doubt that she would be believed because it was one person's word against another.

The next day, August 29, Van Zant filed a complaint with the police. The same day,

Mulchahey delivered a letter of reprimand to King. The letter stated in part:

You have acknowledged to me that on Saturday, August 24, 1991, you approached [Van Zant] in her work area and began making romantic suggestions and issuing social invitations to her. She refused these approaches and asked you to go away and leave her alone. You persisted in your approach. In addition, [Van Zant] alleges that you became very graphic in your language and suggestions, and that you exposed yourself to her. You deny that you exposed yourself. The matter of whether or not you exposed yourself . . . is currently the subject of a criminal complaint. KLM reserves the right to take further action in this matter pending the outcome of those proceedings.

Whatever the outcome of the criminal matter, you have admitted conduct which is unacceptable to KLM. [Van Zant] had asked you to stop and leave her alone: it is clear from this that your attentions toward her were unwanted, and she found your behavior offensive and intimidating. Such conduct is completely unacceptable to KLM and will not be tolerated. In the future, you are to conduct yourself in a manner which is absolutely correct and proper. You are to keep your contact with [Van Zant] to the minimum required for you to successfully meet the requirements of your position and such contact shall be limited to strictly business matters.

In your dealings with all KLMers, you should avoid any unwanted behavior or conversation that others may find hostile, offensive, or intimidating. Any further complaints regarding your conduct and behavior will be investigated and further disciplinary action, up to and possibly including termination of employment, will be taken if warranted.

On August 30, Van Zant returned to work with a court order of protection directed against King. Mulchahey gave her a copy of the letter of reprimand he had delivered to King.

As a result of the investigation growing out of Van Zant's complaint to the police, KLM soon learned that King had a prior criminal

record, which he had failed to disclose in his job application to KLM. The company therefore fired King on September 5, 1991.

In January 1992, King pled guilty to criminal charges resulting from the August 24th exposure incident. In court that day, Van Zant saw Mulchahey shake King's hand and wish him well.

## II. *Retaliation*

In September 1991, shortly after King left KLM, Van Zant was denied the promotion she had been working for that summer. KLM gave the position to an outsider and sent Van Zant a letter explaining that it did not think she had the requisite skills for the job. Two other KLM employees who had sought the position were also rejected.

Around this time, according to Van Zant, Browne—who had been quite supportive throughout the King incident—became "short and nasty" and would yell at her during meetings. Van Zant acknowledged that Browne yelled at others as well.

In spring 1992, Van Zant received her first evaluation in her position as senior accountant. The evaluation was poor. Along with other newly promoted employees, she was denied a salary increase and placed on probation pending improvement of her "sub-standard" performance.

On August 4, 1992, Van Zant filed a complaint with the Equal Employment Opportunity Commission (EEOC) charging KLM with employment discrimination and sexual harassment. The EEOC gave Van Zant a "right to sue" letter to commence this action on March 11, 1993, which she did within 90 days of receipt of the letter.

One day in March 1993, Van Zant saw King outside the KLM building, and then in July of that year she saw him near her work area in the building. On the latter date, Van Zant became upset and was given the day off by Browne. The following week, KLM offered Van Zant a paid, voluntary leave of absence. According to Van Zant, Browne told her that this leave was to last until the

conclusion of her litigation against KLM. However, the letter formally granting the leave made clear that it was subject to review by KLM.

On November 12, 1993, after Van Zant had been on leave for three months, Mulchahey phoned her and asked her to come to his office to discuss her leave and her return to work. She refused and told Mulchahey that all communications should be through their attorneys. On November 23, 1993, Mulchahey sent her a telegram again asking that she come in to discuss her situation, and he sent a letter by overnight mail on November 24th reiterating that request. Van Zant did not respond and did not to report to work. As a result, KLM terminated her employment on November 30, 1993.

## *Discussion*

### I. *Title VII*

 We agree with Judge Motley that Van Zant's Title VII cause of action is, in major part, time barred. Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action. *See* 42 U.S.C. § 2000e–5(e); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332–33 (2d Cir.1992). This statutory requirement is analogous to a statute of limitations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982).

 The parties do not dispute the district court's finding that Van Zant had 300 days to file her claim.[1] Van Zant did not file her charge with the EEOC until August 4, 1992. Thus, only events that occurred during the 300–day period prior to filing—that is, on or after October 9, 1991—are actionable under Title VII. The bulk of Van Zant's suit relates to events that took place prior to October 9, 1991: King's alleged sexual harassment occurred during the summer of

---

1. We find no reference in the record to Van Zant having filed her charge with a state or local equal employment agency before filing with the EEOC. However, since the parties agree that the 300–day period applies in this case, we will accept this as a stipulated fact.

1991 and ended when he was terminated on September 5, 1991.[2] KLM's allegedly insufficient response to Van Zant's reports of sexual harassment ended when King was terminated on September 5. Van Zant's failure to receive a promotion also occurred in September 1991.[3]

Recognizing this, Van Zant responds in two ways. First, she argues that the discrimination against her falls within the "continuing violation" exception to the 300-day rule. The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests. Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, see *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," a continuing violation may be found, *Cornwell,* 23 F.3d at 704. If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred. *Lambert,* 10 F.3d at 53.

Here, Van Zant's claim that there was a continuing violation cannot prevail. Her evidence shows neither a connection between KLM's treatment of her and any company policy or practice, nor that KLM allowed related incidents of discrimination to go unremedied for so long as to amount to a discriminatory policy or practice. As we explain in more detail below, KLM took prompt action in response to Van Zant's complaint that she had been sexually harassed.

Second, Van Zant appears to argue that, because it was not clear to her how the early events at issue (preceding October 9, 1991) would play out, the 300-day time bar should not prevent consideration of those events. This argument has no validity. The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action. *See Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992). As to King's actions toward her, KLM's response, and her failure to receive the promotion, Van Zant had notice of these events at the time each occurred. There is no reason to defer the accrual of her claim to the time she received notice of all discrete acts that might make up her discrimination claim. *Cf. Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990) (noting that equitable tolling is appropriate "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"); *South v. Saab Cars USA, Inc.,* 28 F.3d 9, 11–12 (2d Cir.1994) (describing other instances in which equitable tolling may be appropriate).

Thus, Van Zant's Title VII cause of action is time barred, except as it relates to events after October 9, 1991. We turn then to these events, which include Van Zant's receiving a poor performance evaluation (resulting in her being placed on probation and denied a salary increase) in spring 1992, and her termination in November 1993. Van Zant contends that these actions were done in retaliation for her complaints.

---

2. That Van Zant was upset by seeing King on the KLM premises on two occasions in 1993 is irrelevant to KLM's liability, as KLM's management was not responsible for his being on the premises. Apparently, he had been invited by employees.

3. The alleged verbal abuse by Browne also apparently occurred before October 9, 1991. Re-

gardless, Van Zant cannot fairly characterize Browne's occasional nastiness, which other employees also were subjected to, as an adverse employment decision or action disadvantaging her, which is a prerequisite for a retaliation claim. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995).

A prima facie case of retaliation under Title VII requires the plaintiff to show "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995); *see also Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 64 (2d Cir.1992). Upon such a showing, the defendant must demonstrate legitimate reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive. *Tomka*, 66 F.3d at 1308.

KLM showed valid, unrebutted reasons for its actions. Van Zant's evaluation was the first in her new capacity as a senior accountant. KLM submitted uncontroverted evidence that her work in the new position was below standard. Van Zant admitted, furthermore, that other employees similarly situated received poor reviews and, like her, were placed on probation. Her termination occurred only after her refusal to comply with repeated legitimate instructions of KLM management that she come to the office to discuss the status of her paid leave and her future with the company. Her repeated refusal to obey KLM's instructions gave KLM justification to terminate her.

To defeat KLM's motion for summary judgment, Van Zant was obliged to produce not simply "some" evidence, but "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge." *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–17, 113 S.Ct. 2742,

2752, 125 L.Ed.2d 407 (1993)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (summary judgment appropriate where movant shows "that there is an absence of evidence to support the nonmoving party's case"). Van Zant put forward nothing other than conclusory allegations to suggest a causal relationship between her complaints about King and either her negative 1992 evaluation or her termination. There was no material issue of fact for a jury to consider.

In sum, we conclude that plaintiff's federal cause of action was properly dismissed, in part because it was time barred, and in part because Van Zant failed to rebut KLM's legitimate nondiscriminatory explanations for its actions.

## II. *New York's Human Rights Law*

Van Zant's state law claims are not time barred. Unlike Title VII's 300–day rule, the statute of limitations for actions under New York's Human Rights Law is three years. N.Y. Civ. Prac. L. & R. 214(2). We therefore review the merits of Van Zant's state law claims, which also allege a hostile work environment and retaliation. We find that the district judge correctly granted summary judgment on these claims.[4]

Except for the different periods of proscription, Van Zant's claims under New York's Human Rights Law and Title VII are, for the purposes of this case, essentially identical.[5] And as we have recently noted in the

---

**4.** It was not wholly clear from Judge Motley's opinion granting summary judgment whether she intended to cover the state law claims as well as the federal. However, after Van Zant refiled the state law claims in New York state court, they were removed by KLM to federal court and assigned to Judge Motley, who clarified that her original order of dismissal covered both the federal and state law claims. *See Van Zant v. KLM*, slip op., 95 Civ. 2439.

Counsel for KLM informed us prior to argument of these events and gave us copies of the

relevant district court papers, asking that the record be amended pursuant to Fed. R.App. P. 10(e). We have exercised our discretion under Rule 10(e) and supplemented the record accordingly. *See U.S. v. Thompson*, 710 F.2d 915, 922 (2d Cir.1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 702, 79 L.Ed.2d 167 (1984).

**5.** Title 42 U.S.C. § 2000e–2(a)(1) provides:

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or

sex discrimination context, "New York courts require the same standard of proof for claims brought under the [Human Rights Law] as those brought under Title VII." *Tomka,* 66 F.3d at 1304 n. 4 (citing *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985)).[6]

Thus, to prevail on her hostile work environment claim, Van Zant was required to show "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995) (citations omitted); *see also Tomka,* 66 F.3d at 1305. The harassment which led to the hostile work environment was attributable to a co-worker, not a supervisor. Van Zant, therefore, must demonstrate that KLM "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray,* 57 F.3d at 249 (quoting *Kotcher,* 957 F.2d at 63). Knowledge of harassment may include constructive notice (i.e., management should have known). *Murray,* 57 F.3d at 249-50.

Under these standards, the district judge correctly dismissed Van Zant's hostile work environment claim. KLM provided Van Zant with a reasonable avenue for complaint and she took advantage of it. Although some KLM senior personnel, faced with her accusation and King's denial, were unsympathetic and expressed doubts about her ability to prove her claim that King had exposed himself, the company nevertheless took prompt action in response to the situation. On the day that Van Zant complained of the exposure incident, an investigation began. Within 36 hours, Mulchahey had interviewed Van Zant, King, and a witness of Van Zant's choosing. Within four days, King had been reprimanded and instructed in writing to limit his contact with Van Zant. And within ten days, King had been terminated.

As to whether KLM had notice, Van Zant relies, in part, on the deposition testimony of a low-level supervisor from another department, Frederick Jon Beyersdorfer, who testified that he knew of King's proclivity for inappropriate behavior as early as late 1989 or early 1990. Van Zant argues that his knowledge, perhaps along with that of her supervisor Browne, was sufficient to demonstrate that KLM knew of King's tendency toward harassment but did nothing about it. For the knowledge of a supervisor to be imputed to the company, that supervisor must be "at a sufficiently high level in the hierarchy" of the company. *Kotcher,* 957 F.2d at 64; *see also Karibian v. Columbia Univ.,* 14 F.3d 773, 780 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994) (knowledge of "low-level supervisor" not imputed to employer). Beyersdorfer—a supervisor of data communications technicians—was too low in the hierarchy to properly qualify as a proxy for the company. Moreover, the one KLM employee whom Beyersdorfer said had told him of

to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

New York Exec. Law § 296(1)(a) provides:

It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

**6.** *See also Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 479, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982) ("The elements of a successful employment discrimination claim [under New York and federal law] are virtually identical."); *Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir.1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim"); *Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1048 (2d Cir.1992) (noting "New York's wholesale adoption of federal standards in discrimination cases under [its Human Rights Law]"); *Watts v. New York City Transit Auth.,* 213 A.D.2d 253, 254, 624 N.Y.S.2d 124, 124 (1st Dep't 1995) (evaluating sex discrimination claim under Human Rights Law by looking to federal standards).

harassment by King denied it. Browne also was a low-level supervisor. Nor was there evidence that Browne knew at an early date of King's sexually harassing behavior; rather, she characterized him as "disruptive." As soon as Van Zant informed Browne that she was being sexually harassed by King, Browne took substantial steps to see that Van Zant's complaint was taken seriously.

Van Zant's contention that KLM retaliated against her by denying her a promotion in September 1991 fails for the same reason as her other retaliation claims. As discussed above, Van Zant was unable to show any causal relationship between her complaints about King and KLM's actions toward her. *See Tomka,* 66 F.3d at 1308. As for the promotion, KLM gave Van Zant a letter explaining in detail why she lacked the skills for the job. The position, furthermore, was denied not only to Van Zant but to two other KLM employees who had sought it, and was awarded to an outsider.[7]

In sum, even drawing all inferences and resolving all ambiguities in Van Zant's favor, we find that the evidence she proffers is insufficient to raise an issue of material fact undermining the explanations provided by KLM. *See Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

### Conclusion

As summary judgment was warranted on Van Zant's federal and state causes of action, we affirm the district court's dismissal of the case.

---

7. For the reasons stated above, *see supra* note 3, we also find no merit in Van Zant's vague claim that she was verbally abused by Browne.