Charles CARTER, Plaintiff–Appellant,

v.

**NEW YORK CITY DEPARTMENT OF CORRECTIONS, et al., Defendants–Appellees.**

**Docket No. 00–7118.**

United States Court of Appeals, Second Circuit.

April 5, 2001.

Charles Carter, Mount Vernon, NY, pro se.

Joseph I. Lauer, New York, NY, for defendants-appellees.

Present OAKES, STRAUB, Circuit Judges, KAPLAN,* District Judge.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.

Plaintiff–Appellant Charles Carter, *pro se,* appeals from an order and judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*) dismissing Mr. Carter's action in its entirety. Mr. Carter alleges that the New York City Department of Corrections ("DOC"), as well as the DOC Commissioner and several of its Captains, discriminated against him in his employment and retaliated against him for prior complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.,* and several New York state statutes.

In 1991, Mr. Carter filed a complaint with the New York State Division of Human Rights ("SDHR") that alleged racial discrimination in employment, and later amended his complaint to include retaliation.[1] Shortly thereafter, Mr. Carter was found guilty of violating DOC rules and regulations, including time and leave violations, insubordination, inefficient performance of duties, and making false entries on a business record or making false state-

ments to a superior. DOC dismissed Mr. Carter on April 6, 1993. Mr. Carter appealed his dismissal to the New York City Civil Service Commission ("Commission"). According to Mr. Carter, during the appeal process, the attorney for DOC was non-responsive and thereby delayed his appeal. In June 1995, the Commission affirmed the findings of guilt, but ordered him reinstated to his position within 30 days. Mr. Carter, however, was not actually reinstated on February 13, 1996. He therefore brought suit for back pay and later reached a settlement with DOC. In exchange for back pay from July 1995, Mr. Carter agreed to "release [DOC] and all present or former employees or agents of the City of New York from any and all liability, claims, or rights of action arising from the events alleged in the petition in this proceeding. . . ." After being reinstated, in April 1996 administrative charges were filed against Mr. Carter for conduct unbecoming an officer, bringing discredit upon the department and disobeying a direct order to remove two vehicles from a parking lot at Yankee Stadium. In May and July, Mr. Carter received notices that, collectively, thirteen disciplinary charges were being brought against him. Finally, in October 1996, four new violations were brought alleging that Mr. Carter left his assigned post without permission, falsified his time-sheet, failed to comply with a direct order to submit a written report, and treated the order of a direct supervisor with contempt and disrespect. None of the 1996 charges were fully adjudicated or resulted in punishment. As of January 2, 1999, Mr. Carter was no longer employed by DOC.

---

\* The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

1. SDHR investigated Mr. Carter's claims and, by an opinion dated October 4, 1994, found no probable cause that DOC had discriminated against him. The EEOC similarly concluded that Mr. Carter had not produced evidence of a Title VII violation.

On June 14, 1996, Mr. Carter filed a second complaint with the SDHR, pursuant to the New York Human Rights Law and Title VII, alleging *inter alia* that the disciplinary charges brought against him were retaliation for his 1991 SDHR complaint. On December 28, 1996, Mr. Carter received a right to sue notice with respect to his 1996 SDHR complaint. He then filed a complaint—the subject of the instant action—in the United States District Court for the Southern District of New York on March 20, 1997 alleging that he suffered discrimination and retaliation from "April 7, 1993 present."

In federal court, the defendants moved for summary judgement claiming *inter alia* that Mr. Carter's claims were administratively unexhausted and he failed to make a prima facie case of retaliation or discrimination. The District Court referred the matter to a magistrate judge (James C. Francis, IV, *Mag. Judge*), who construed Mr. Carter's complaint as bringing claims pursuant to the New York Human Rights Law, N.Y. Exec. § 296, and Title VII, but recommended that summary judgment be granted. First, the magistrate found that Mr. Carter's claims of racial discrimination and retaliatory conduct prior to his February 1996 reinstatement were unexhausted because they were not raised in his 1996 SDHR charge. The magistrate also recommended that the court dismiss Mr. Carter's remaining retaliation claims because Mr. Carter failed to establish a causal connection between his filing of the 1991 SDHR complaint and the 1996 disciplinary charges. Finally, the magistrate recommended that the state law claim be dismissed for the same reasons as his federal claim, since New York courts have adopted the federal standard for such claims. The District Court adopted the magistrate's report and dismissed Mr. Carter's action. Mr. Carter thereafter filed a timely notice of appeal.

We review orders granting summary judgement *de novo,* focusing our inquiry on whether the district court properly concluded that the moving party was entitled to judgment as a matter of law. *See Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir.1999). To do this, we resolve all ambiguities and factual inferences in favor of the party against whom summary judgment was granted. *See, e.g., Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir. 1999). Summary judgement, however, cannot be defeated simply by conclusory allegations. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). Instead, the non-moving party must come forward with specific facts that create a genuine issue for trial. *See, e.g., West–Fair Elec. Contractors v. Aetna Cas. & Sur. Co.,* 78 F.3d 61, 63 (2d Cir.1996) (per curiam).

■ Even under this rigorous standard, we concur with the District Court's decision to dismiss Mr. Carter's claims. First, Mr. Carter failed to exhaust available administrative remedies in regard to racial discrimination claims since he did not raise them in his SDHR charge and they were not reasonably related to the retaliation claims that were alleged before the SDHR. *See Shah v. New York State Dep't of Civil Service,* 168 F.3d 610, 613–14 (2d Cir. 1999).

■ In regard to Mr. Carter's retaliation claims, the District Court concluded that Mr. Carter's claims based on conduct occurring prior to February 1996 were unexhausted because Mr. Carter's allegations in his SDHR charge were not sufficiently specific. Even assuming that he did administratively exhaust those claims, Mr. Carter's retaliation claims under Title VII were properly dismissed. Under Title VII, a plaintiff must file an administrative claim within 300 days of the retaliatory

conduct. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996). The 300 day limit functions as a statute of limitations, precluding consideration of events that occurred more than 300 days prior to filing an administrative complaint. *See id.* at 713. Therefore, we may only consider events that occurred after August 20, 1995—300 days prior to Mr. Carter's SDHR charge.[2] Mr. Carter complains of two sets of events that occurred after August 1995—his delayed reinstatement and the various 1996 disciplinary charges. However, because any claim based on delayed reinstatement is barred by the settlement release he signed in 1996, his retaliation claim must stand, if at all, on the disciplinary charges brought against him in 1996.

■ Turning to the merits of Mr. Carter's claims, we find that he would be unable to establish a *prima facie* case of retaliation under Title VII based on the 1996 disciplinary charges. "To establish a prima facie case for retaliation, a plaintiff must show that (1) the employee was engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Reed v. A.W. Lawrence & Co. Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996). A causal connection can be established directly through evidence of retaliatory animus or "indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir. 1991). Mr. Carter did not present evidence that DOC acted with "retaliatory animus" against him when it filed disciplinary charges or that it treated him in a different manner than any other employee who engaged in similar conduct. Carter's conclusory allegations that DOC brought the charges in an "overzealous" manner are insufficient to raise a triable claim. Moreover, because none of the 1996 disciplinary actions were actually adjudicated or resulted in punishment against Mr. Carter, he is unable to show that he suffered an adverse employment action. *See Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir. 1996) (the filing of charges against employee that were not adjudicated did not constitute retaliation); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.) (threats of termination, reprimands, hostility from fellow employees, and being placed on warning were not "ultimate employment decisions" and thus not "adverse employment actions"), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997).

■ Mr. Carter also asserts two state law claims. First, he asserts a claim based

---

**2.** We may also consider events prior to August 20, 1995 that fall within the "continuing violation" exception to Title VII's statute of limitations. *See Van Zant,* 80 F.3d at 713. A continuing violation occurs "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* Mr. Carter has not alleged nor pointed to any specific facts that would establish that events after April 7, 1993, when his complaint contends the retaliatory conduct began, were part of a "discriminatory policy" of DOC. Even broadly construing Mr. Carter's claims to include the 1991 disciplinary charges, we still do not find a continuing violation. *See Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993) ("The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests .... multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

on the New York Human Rights Law analogous to his Title VII claim. However, because New York courts have adopted the federal standard for discrimination and retaliation claims, *see Reed,* 95 F.3d at 1177, and because his allegations are insufficient to raise a triable Title VII claim, his state claim must also fail.[3] Second, Mr. Carter raises a claim under N.Y. Lab. Law Art. 20–C § 740 for the first time in this appeal. While this Court need not address issues presented for the first time on appeal, *see Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), Mr. Carter, in any event, has failed to establish a case under the statute. Section 740 is New York's "whistle blower" statute and is designed to protect employees from retaliation from their employers when they expose illegal activity which poses a danger to the public health or safety. *See* N.Y. Lab. Law Art. 20–C § 740(2); *United States ex rel. Pilon v. Martin Marietta Corp.,* 60 F.3d 995, 998–99 (2d Cir.1995) (defining § 740 as "the New York 'whistle-blower' statute"). Mr. Carter did not state a claim under § 740 as he has not claimed that he was retaliated against for exposing illegal activity of DOC that threatened the public's health or safety.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.

---

**3.** The New York Human Rights Law has a three-year statute of limitations, measured from the date that a judicial proceeding is brought. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). Therefore, we may consider events going back to March 1994, three years prior to the filing of his claim in federal court. The only event within this time period not already considered is the claimed delay by DOC attorneys in responding to Mr. Carter's appeal to the Commission. However, he has presented no evidence, beyond his conclusory allegations, that his appeal was unnecessarily delayed, that the DOC acted out of animus or that he was treated differently than any other similarly situated employee. Therefore, this additional event fails to establish a *prima facie* case of retaliation.