**Samuel L. BERGER, Plaintiff,**

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.**

No. 97–CV–800.

United States District Court,
E.D. New York.

July 18, 2001.

Scott J. Steiner, Steiner & Ebeling, LLP, White Plains, NY, for Plaintiff.

Gerald S. Crowley, Milton H. Pachter, New York City, for Defendant.

**ORDER**

GERSHON, District Judge.

Plaintiff Samuel L. Berger brings this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et*

1. By letter dated April 25, 2000, plaintiff withdrew his claims under state and local human rights laws.

2. In approximately 1988, the division was renamed the Market Research Services Division.

*seq.* ("ADEA"), against his former employer, the Port Authority of New York and New Jersey ("Port Authority").[1] Defendant now moves for summary judgment. For the following reasons, defendant's motion is granted.

Plaintiff was born on March 20, 1934, and he began working for the Port Authority in 1962. After working his way up through the company, he was promoted in 1980 to the position of Acting Manager of the Planning Services Division.[2] About nine months later, plaintiff received the permanent title of Manager of the Planning Services Division. According to plaintiff's description, the Planning Services Division provided marketing research and statistical analysis services to the various departments within the Port Authority.

Plaintiff alleges that he performed his role as Manager without any problems until early 1988, when Emily Lloyd was named Director of the department in which the Planning Services Division was located. Approximately a year and a half later, in July 1989, Ms. Lloyd advised plaintiff that she was replacing him as Manager, and she assigned him the title Internal Consultant.[3] Plaintiff's salary and pay grade remained the same, and, until December 1989, he essentially continued in his role as Manager. In December 1989, however, Ms. Lloyd hired Stephen Carlson, who was approximately 10 years younger than plaintiff, to assume the Manager position.

Plaintiff alleges that, from December 1989 until his retirement in August 1995,

3. The Port Authority refers to the title of the position as Senior Consultant.

Ms. Lloyd and Mr. Carlson discriminated against him continuously on the basis of his age. In essence, he claims that they marginalized him by stripping him of his supervisory responsibilities, by failing to precisely define his new role in the division and by giving him meaningless assignments. He alleges that they took away his staff and his personal secretary, that he was excluded from management meetings and that he was no longer permitted to attend management conferences and retreats. He also challenges two mediocre performance reviews he received in 1993 and 1994 as well as his merit increases for those same years, which he claims were the lowest percentage increases awarded in the division.

After his alleged demotion in 1989, plaintiff claims he complained repeatedly to various superiors in the Port Authority that he was being underutilized, that he was receiving inadequate guidance, that his performance reviews were inaccurate and his merit increases too low. He claims that the Port Authority was unresponsive to all of these complaints. As a result, in 1994, plaintiff attempted unsuccessfully to obtain another position within the Port Authority. In July 1995, plaintiff filed a complaint with the Port Authority's Equal Employment office, and, on August 24, 1995, he filed a charge of discrimination with the EEOC. Around that same time, allegedly feeling that he had "exhausted" his options, plaintiff chose to participate in the Port Authority's Retirement Incentive Program. Plaintiff's retirement became effective August 31, 1995.

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *See id.* A material fact is one whose resolution would "affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the nonmoving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

As is explained more fully below, plaintiff has failed to raise a genuine issue of fact with respect to any of his timely claims, and he cannot, as a matter of law, rely upon the continuing violation doctrine to resurrect his untimely claims. Accordingly, defendant is entitled to summary judgment.

### Events Falling Within the 180–Day Statute of Limitations

■ The parties agree that plaintiff was required to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful practice. *See Dezaio v. Port Auth. of N.Y. and NJ,* 205 F.3d 62, 65 (2d Cir.) (180–day limitation period ap-

plies to claims brought by an employee of the Port Authority under the ADEA), *cert. denied*, 531 U.S. 818, 121 S.Ct. 56, 148 L.Ed.2d 24 (2000). The only alleged violations that occurred within this 180–day statutory period are plaintiff's claims that he was subjected to a hostile work environment and that he was constructively discharged. Plaintiff attempts to reach earlier conduct by invoking the continuing violation exception to the statute of limitations. Whether or not the continuing violation exception applies, I have considered all of the evidence on the theory that it is relevant background to plaintiff's constructive discharge claim. *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir.2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period").

As was confirmed during oral argument, the basis for plaintiff's hostile work environment claim is that Stephen Carlson criticized plaintiff's work (in plaintiff's view, unjustifiably), made trivial edits and asked plaintiff to redraft assignments numerous times. This evidence does not reflect the kind of abusive treatment that the Second Circuit requires for hostile work environment claims. *See Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999) (workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment") (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

█ Nor can plaintiff show that his voluntary retirement amounted to a constructive discharge. There is no evidence in the record to suggest that plaintiff's working conditions became so intolerable in 1995 that he was forced to resign. *See*

*Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.1996) ("Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily"). Rather, the most severe employment action taken against plaintiff was his demotion in 1989. Plaintiff did not resign at that time; in fact, he continued to work for six more years. Plaintiff cannot now resurrect his untimely challenge to the 1989 demotion by calling it a constructive discharge.

### Continuing Violation

█ Having dismissed the only timely claims, it is unnecessary for me to address plaintiff's argument that the continuing violation exception permits him to recover for events that occurred more than 180 days before he filed his EEOC charge. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558–59, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (when evaluating an alleged continuing violation, "the critical question is whether any present violation exists"); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) (continuing violation only applies where the EEOC charge is timely as to at least one incident of discrimination); *Johnson v. Nyack Hosp.*, 891 F.Supp. 155, 165 n. 10 (S.D.N.Y.1995) (the act that occurs within the limitations period must itself constitute a violation; a mere consequence within the period of an earlier violation is insufficient to trigger the continuing violation doctrine). In any event, plaintiff's evidence does not meet the Second Circuit's stringent test for proving a continuing violation because he cannot show either that the Port Authority had an "ongoing discriminatory policy or practice" or that it permitted "specific and related instances of discrimination" to "continue unremedied for so long as to amount to a

discriminatory policy or practice." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996) (citations omitted).

Moreover, the evidence demonstrates that plaintiff was on notice that his legal claims had accrued many years before he filed his EEOC charge. The most serious charge of discrimination occurred in 1989, and plaintiff acknowledges in his affidavit that, "[s]tarting in the summer of 1991," he "realized that Emily Lloyd and Stephen Carlson had adopted a de facto policy of discrimination against" him. Several courts in this circuit have refused to apply the continuing violation doctrine when presented with similar evidence that a plaintiff knew he had been the victim of discrimination but delayed in pursuing his legal rights. *See, e.g., Johnson,* 891 F.Supp. at 165–66. I agree with the rationale behind these cases that the central purpose of the continuing violation doctrine is to protect plaintiffs who could not have known that they should have sued earlier. *But see Fitzgerald,* 251 F.3d at 373 (Korman, D.J., dissenting in part) (agreeing with this principle but opining that it had been implicitly rejected by the majority). Here, plaintiff offers no explanation for why he waited six years after being demoted and approximately four years after "realiz[ing]" he had been the victim of discrimination to file a charge with the EEOC. Under these circumstances, the continuing violation doctrine does not apply.

### Conclusion

For the foregoing reasons, the Port Authority's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for defendant.

**SO ORDERED.**