Jennifer CURTIS, Plaintiff,

v.

RADIOSHACK CORPORATION, Defendant.

No. 01 CIV. 9124(CM).

United States District Court, S.D. New York.

Feb. 28, 2002.

Barry David Haberman, New York City, for Plaintiff.

Scott T. Baken, Jackson, Lewis, Schnitzer & Krupman, White Plains, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS TITLE VII CLAIMS

McMAHON, District Judge.

On June 23, 2000, 342 days after she was fired—allegedly on account of her pregnancy—plaintiff Jennifer Curtis filed a charge of discrimination with the Dutchess County office of the New York State Division of Human Rights ("NYSDHR") (which has a sharing agreement with the EEOC) against her employer, RadioShack

Corporation ("RadioShack"). The charge alleged that plaintiff's employment was terminated because of sex discrimination based on her pregnancy. Curtis received a right to sue letter on February 15, 2001, and commenced this action within the statutory 90 day period. Because her EEOC charge was filed more than 300 days after the last act of alleged discrimination was committed, defendant moves to dismiss plaintiff's First, Second and Third causes of action alleging discriminatory discharge and retaliatory discharge, which were commenced under Title VII, as time-barred. The motion is granted.

Curtis does not contest the fact that her charge was belatedly filed. She argues that she is entitled to invoke the doctrine of equitable tolling, because she made a complaint to the Dutchess County Human Rights Commission (DCHCR) well within the 300 day period and was misled into thinking that she had done everything necessary to protect herself. After hearing testimony from Curtis and from the person with whom she dealt at DCHCR, I conclude that plaintiff cannot invoke the equitable tolling doctrine, even though someone at DCHCR lost her file for many months.

The record shows that Curtis, having been fired on March 15, 2000, contacted DCHCR on June 23, 2000. She made this contact because Radio Shack was contesting her claim for unemployment benefits, and she believed she had been discriminated against due to her pregnancy. Curtis spoke to Violet Menash, who was an Office Assistant/Human Rights Assistant at DCHCR's Poughkeepsie office. Ms. Menash did the intake on plaintiff's complaint.

Curtis recalled that Ms. Menash took her information and then advised plaintiff that DCHCR would call if it needed anything further. She was not referred to any other agency or told to do anything else in connection with the filing of a complaint. Curtis did not hear from DCHCR until February 15, 2001, when she received a letter in the mail, indicating that she would need to provide additional information. [Pl. Reply, Ex. 3.] She contacted DCHCR immediately, at which time she was told she needed to file a charge with another agency. She filed her charge on February 21, 2001. [Verified Compl., Ex. 1.]

Ms. Menash (who now works for the New York State Office of Children & Family Services), worked for DCHCR for 18 months, beginning in November 1999. One of her principal responsibilities was complaint intake. While Ms. Menash had no specific memory of Ms. Curtis's complaint, she testified about the procedure she normally followed when receiving and processing a complaint, and further testified that she could think of no reason why she would have varied from her ordinary procedure in Ms. Curtis' case. I find Menash's testimony credible in all respects, including in this respect, and thus find that Menash followed her usual protocol during the intake process with Curtis.

Under her protocol, Ms. Menash took the call, explained that she was doing an intake and preparing a case summary. She asked what type of discrimination the person had suffered from and, depending on the answer, followed up with specific questions relating to that type of discrimination. After taking the information, it was her practice to explain that all she was doing was preparing a case summary for review by her supervisor, Marilyn Vetrano, and that DCHCR would get back to her after Ms. Vetrano reviewed the case summary. Menash also regularly told callers that DCHCR did not give legal advice or investigate complaints, and that aggrieved parties had a right to file complaints with

SDHR and the EEOC (agencies that do investigate complaints). Finally, Menash told callers that they could call if they had any questions about the procedure.

In the ordinary course at DCHCR, Menash prepared a written summary of each case, which she ended by creating a chronology of the events described. The chronology was required by Vetrano. At the same time, Menash prepared a calendar containing the deadline for the filing of a complaint with the appropriate agency; that information was noted on the case file. The file was then handed off to Vetrano, who reviewed it and made a recommendation (which she would add to the written summary). After Vetrano's review, the summary would be sent to the complainant, along with a flyer outlining the procedures for filing a formal complaint with the SDHR. As DCHCR had only two employees, it generally took a month or two for a complainant to receive some response.

Menash typed up her case summary for Curtis on July 18, 2000 (Pl.Reply, Ex. 2). It was her usual practice to place case summaries on Vetrano's desk for review. Had Vetrano timely reviewed the summary, it would have been sent to Curtis, along with instructions for filing a real complaint with the correct agency, well within the 300 day limit.

That, of course, did not occur. There is no way to know what happened to the case summary between July 18, 2000 and February 15, 2001, but—as Vetrano reportedly admitted in an affidavit filed by plaintiff—Curtis' case fell through the cracks. [Haberman Aff. at ¶ 10.] The case summary was not reviewed by Vetrano until shortly before the February 15 letter was sent

out, and Vetrano did not formulate her recommendation until February 20, 2001 (Pl.Reply, Ex. 2).[1] By the time Vetrano did anything with the case summary, the 300 day deadline had already passed.

At no time between June 23, 2000 and February 15, 2001 did Curtis call DCHCR to check on the status of her matter or to make any inquiry, procedural or otherwise. When asked why she did not follow up with DCHCR, she testified that she assumed from the agency's silence that it did not feel that she had a strong enough case to proceed.

RadioShack argues that plaintiff's First, Second and Third causes of action are time barred pursuant to 42 U.S.C. § 2000e–5(e)(1), which provides that to sustain a cause of action pursuant to Title VII, a plaintiff must file an administrative charge with the EEOC within 300 days of the allegedly discriminatory or retaliatory act. 42 U.S.C. § 2000e–5(e)(1); *see also Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n. 1 (2d Cir.2000); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir.1996). The 300–day period effectively acts as a statute of limitations. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998). District courts dismiss Title VII claims where the plaintiff has failed to comply with the timing requirements. *See, e.g., Williams v. New York City Housing Auth.*, 2000 U.S. Dist. LEXIS 17173, at *7–11 (S.D.N.Y. Nov. 20, 2000) (granting defendant's Rule 12(b)(6) motion to dismiss where plaintiff failed to file her charge of discrimination within 300 days of the alleged discriminatory acts); *Smith v. New York State Ins. Fund*, 2001 U.S. Dist.

---

1. It is possible to make these findings with precision because, each time someone added something to the case summary, the initials of the author and the date appear in the lower left hand corner of the last page. Thus "vm 7/18/00" on Ex. 2 indicates the date the case summary was prepared, and "mav 2/20/01" on the same exhibit indicates the date Vetrano added her recommendation.

LEXIS 789, at *5–6 (S.D.N.Y. Jan. 31, 2001) (same).

"Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir.1998) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). However, in order to establish an "evenhanded administration of the law," district courts are compelled to heed the Supreme Court's warning not to disregard the timing requirements simply because we feel sympathy for the plaintiff. *Smith v. Henderson*, 137 F.Supp.2d 313, 317–18 (S.D.N.Y.2001) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984)).

Equitable tolling is appropriate only when a court or agency of the government has misled the plaintiff to believe to his detriment that he or she has done everything required. *See Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir.1995); *see also Smith v. Henderson*, 137 F.Supp.2d at 318; *Spira v. Ethical Culture Sch.*, 888 F.Supp. 601, 602 (S.D.N.Y.1995) (refusing to toll the statute of limitations based upon the plaintiff's allegation that an EEOC worker erroneously told him that the ninety-day period was determined by counting by business days rather than calendar days). Moreover, the plaintiff must act diligently in preserving her legal rights. *See id.; South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir.1994).

The DCHCR did not mislead plaintiff into believing that she has done everything necessary to preserve her claim. On the contrary, Menash told plaintiff that DCHCR was not empowered to investigate her complaint. Menash also told plaintiff that DCHCR would get back to her, yet for over seven months plaintiff heard nothing. If plaintiff had exercised reasonable diligence during this period that she seeks to have tolled, she would have called the DCHCR and followed up on her claim. Plaintiff did not do so, and she was not misled into this complacency by the DCHCR. *See, e.g., South*, 28 F.3d at 12 (no equitable tolling for claim filed 18 days after the end of the limitations period because plaintiff was not reasonably diligent in pursuing his claim); *Avillan v. Potter*, 2002 WL 252479, at *3 (S.D.N.Y. Feb.21, 2002) (no equitable tolling for claim filed 6 days after end of limitations period because plaintiff was not reasonably diligent in pursuing his claim).

Defendant's motion to dismiss plaintiff's First, Second and Third causes of action is granted. The harsh effect of this ruling is significantly ameliorated by the fact that plaintiff has surviving claims under the New York State Human Rights Law, the Fair Labor Standards Act and the New York State Labor Law.

This constitutes the decision and order of the court.