**Min Kou CHENETTE, Plaintiff–Appellant,**

v.

**KENNETH COLE PRODUCTIONS, INC., Defendant–Appellee.**

**No. 08–5068–cv.**

United States Court of Appeals, Second Circuit.

Sept. 4, 2009.

E. Christopher Murray, Reisman Peirez & Reisman LLP, New York, NY, for Plaintiff–Appellant.

Traycee Ellen Klein, Epstein Becker & Green, New York, NY, for Defendant–Appellee.

Present: RALPH K. WINTER, ROSEMARY S. POOLER, Circuit Judges, and ROSLYNN R. MAUSKOPF,[1] District Judge.

1. The Honorable Roslynn R. Mauskopf, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY ORDER

Plaintiff-appellant Min Kou Chenette asserts employment discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as well as claims under New York State Human Rights Law ("NYSHRL"), Executive Law § 290 *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, Title 8.

In her complaint, which is dated May 19, 2005, Chenette, who refers to herself as "a Korean female," alleges that she was hired by Kenneth Cole Productions, Inc. ("KCP") as a regular employee on August 1, 2003, after having completed an internship the previous year. She spent her entire tenure at KCP working as an International Coordinator in the International Licensing Department ("the Department"). Apparently, but for Chenette's supervisor, everyone who worked in the Department was female.

The central allegation of Chenette's complaint is that, throughout her time at KCP, she was "subjected to a regular, frequent, unwanted, and abusive pattern of behavior directed against her, as well as a working environment characterized by lewd, racial, and sexual comments and innuendos, slander, offensive physical contact, and other inappropriate behavior . . . ." She alleges a number of instances in which co-workers engaged in sexually-charged jests, some employing ethnic stereotypes. Notably, KCP does not deny that Chenette's workplace was a free-wheeling one. It characterizes the Department as "a casual and friendly atmosphere" in which "friends and colleagues . . . used coarse language and behaved in an overly familiar manner towards each other."

It is undisputed that Chenette sought out promotions while at KCP, and she specifically alleges that her supervisor, Vincent Montemarano, told her that she would be considered for promotion to the position of Associate Manager for Asia. This position, however, as well as the position of Associate Manager of International Licensing, were awarded to others, both female.

The single incident allegedly indicative of a hostile working environment (hereinafter "the Kissing Incident") which is most emphasized in Chenette's briefing on this appeal is set forth as follows in her complaint:

> 21. On May 28, 2004, Plaintiff was on her way back to her desk from a meeting. Cyndi Shapiro saw her walking by and asked her to stop, whereupon Ms. Shapiro said: "Hey I am sorry if I was nasty to you on the phone yesterday, but I am overwhelmed and understaffed, and I lost my control there. I hope that you are ok with that." Then, she came over to Plaintiff, petted her cheek with her two hands, and kissed her on the lips.

KCP acknowledges that Chenette subsequently reported the matter to its Human Resources Department, and that she also reported alleged acts of sexually and ethnically insulting comments occurring within the Department. KCP declares that, in response, it undertook two corrective actions: (1) as evidenced by an e-mail message, Ellen Rodriguez, the head of the Department, held a departmental meeting on July 12, 2004 to discuss appropriate workplace conduct; and (2) KCP in-house attorney Shari Berman conducted an internal investigation of the Kissing Incident and, as a result, KCP issued an "Incident Warning," dated August 2004, to Cyndi Shapiro, informing her that she faced immediate termination should she engage in another "infraction of company policy and/or procedure."

Chenette alleges, however, that her reporting of the Kissing Incident and other inappropriate conduct resulted in a campaign of retaliation against her. First, she contends that, on June 17, 2004, Montemarano gave her a largely negative performance review. Further, on some unspecified date, Chenette contacted an attorney, Mark D. Schwartz, concerning her problems at KCP. Schwartz wrote two letters, dated July 12, 2004 and July 19, 2004, to the General Counsel of KCP. These communications resulted in what both parties refer to as an "interview," on August 24, 2004, during which Berman and Gail Catropa, KCP's Vice President for Human Resources, questioned Chenette about her complaints. The parties agree that the interview did not proceed in a productive fashion. Most especially, Chenette was accompanied by Schwartz, who was asked to leave because Berman and Catropa were objected to his interruptions of their questioning.

In a letter to Montemarano, dated August 25, 2004, Chenette announced her resignation from KCP "as a result of pervasive harassment and discrimination at [KCP] directed toward me and others, as well as the retaliation that I have experienced for having reported such activity." In a letter, dated the following day, Catropa asked Chenette not "to make a rash decision about your employment," and gave Chenette "until Monday, September 7, 2004 to reconsider your resignation and report back to work." Chenette did not respond.

The district court initially granted summary judgment on all but one of Chenette's claims. Judge Cote held as follows with respect to these claims: (1) Chenette's failure to promote claims failed because she was demonstrably less qualified than the two individuals who received promotion in that "Chenette had not yet received an undergraduate degree and

had only worked in a full-time entry-level licensing position for approximately nine months"; (2) there was no improper retaliation arising from her negative performance review in June 2004 because Chenette herself acknowledged at her deposition that the Kissing Incident, of which she had complained shortly before the review, was not motivated by discriminatory intent as contemplated by Title VII; (3) Chenette was not constructively discharged because she could not make the legally required showing that "resigning was the only way to extricate herself from intolerable conditions"; and (4) even assuming that Chenette could prove that her work environment "sufficiently abusive," she could succeed before a jury with her hostile work environment claim because KCP took "prompt and effective remedial actions" in response to Chenette's complaints. Judge Cote also held, however, that summary judgment was not warranted on Chenette's claim of retaliation arising from the August 24, 2004 interview because a question of fact existed as to whether the contentious atmosphere prevailing on that occasion "would dissuade a reasonable employee from making or pursuing a charge of discrimination."

KCP filed a motion for reconsideration as to the denial of summary judgment on the claim of illegal retaliation arising from the August 24th interview. Judge Cote granted this motion, holding that "it was appropriate for and indeed incumbent upon KCP to conduct an investigation of Chenette's discrimination complaint, and to interview Chenette during that investigation." Accordingly, Chenette could not meet her burden of demonstrating that the interview was conducted as a result of a retaliatory motive, rather than out of legitimate "desire to develop a defense to a threatened lawsuit." The instant appeal followed.

"We review a grant of summary judgment *de novo."* *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir.2008). We analyze Chenette's Title VII claims under the familiar standard set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This analysis is also applicable to her claims under the NYSHRL and the NYCHRL. *See Weinstock v. Columbia University,* 224 F.3d 33, 42 n. 1 (2d Cir. 2000).

In general, we believe that the disposition of this case is governed by the principle that "Title VII does not establish a 'general civility code' for the American workplace." *Petrosino v. Bell Atlantic,* 385 F.3d 210, 223 (2d Cir.2004) (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). It is entirely possible that Chenette believed that her work environment was "disgusting." But unless Chenette can demonstrate that the Department was disgusting in a manner that could be considered as discriminatory towards her as a Korean woman, and that adverse employment actions transpired as a result of her opposition to this situation, she does not have a cognizable Title VII claim.

■■■**A. Failure to Promote.** Chenette makes flatly conclusory statements that she was qualified for the positions she sought. Whether or not this is true, we do not see that she has attempted to demonstrate that she had greater qualifications than the individuals who were promoted. Judge Cote noted that, in contrast to these individuals, Chenette did not have a college degree, and had considerably less experience in licensing. In addition, KCP asserts that because she was still pursuing her college degree, Chenette had a limited ability to travel, something which is plainly important to an international licensing position. In sum, because a plaintiff's "merely subjective assessment" of her own qualifications for promotion cannot defeat evidence that other individuals were more qualified, *Dawson v. Bumble & Bumble,* 398 F.3d 211, 224 (2d Cir.2005), Chenette has no claim arising from KCP's failure to promote her.

■■■ **B. Retaliation.** Title VII makes it illegal for an employer to retaliate against an employee "because [s]he had opposed any practice made an unlawful employment practice" by the statute. 42 U.S.C. Section 2000e–3(a). With respect to the Kissing Incident, Judge Cote largely relied upon Chenette's deposition testimony to establish that Chenette did not believe that Cyndi Shapiro's action was motivated by a discriminatory intent, and therefore held that Chenette's subsequent negative performance review could not be seen as a retaliatory act. We think, however, that, regardless of Chenette's opinion, it cannot be demonstrated that, standing by itself, the kiss was violative of Title VII. Even if one considers the act as a sexual one, it is certainly wrong for Chenette to assert that it could reasonably amount to "sexual harassment" in violation of Title VII. On the contrary, "[n]o reasonable person could have believed that [a] single incident" of sexually inappropriate behavior by a co-worker could amount to sexual harassment. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Further, the August 24th interview certainly could not be considered an act of retaliation. KCP acted properly in investigating Chenette's allegations because her attorney had already been threatened it with the filing of a lawsuit on the basis of those allegations.

■■■ **C. Hostile Work Environment.** To succeed on this claim, Chenette must prove "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to

alter the conditions of her work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996). Even if we assume *arguendo* that the first element has been met because the offensive activity alleged by Chenette is sufficiently pervasive to constitute a hostile work environment, there is simply insufficient evidence to establish the latter element.

First, of all the offensive comments and actions alleged by Chenette, there is apparently only one, an off-color comment made by Montemarano, which was committed by a supervisory employee at KCP. More importantly, there is considerable evidence in the record that KCP, rather than tolerating a hostile work environment, acted to forestall it. It is undisputed that, after complaints made by Chenette, Berman conducted an investigation, and a meeting of the Department was held to discuss proper deportment in the workplace; that Cyndi Shapiro was disciplined for the Kissing Incident, *see Dawson*, at 223 ("any liability against [employer] arising from" allegedly offensive comments of co-worker "was precluded" by employer's disciplining of co-worker); and that, however unsuccessfully, KCP conducted a formal interview of Chenette in response of her threat of a lawsuit. We can therefore find no reason to reverse Judge Cote's holding that KCP exercised reasonable care in attempting to eliminate the conditions of which Chenette complains.

**D. Constructive Discharge.** "[A]n employee is constructively discharged when [her] employer ... intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily." *Petrosino*, 385 F.3d at 229. Having failed on her hostile work environment claim, "she can neither survive summary judgment on her constructive discharge claim, which requires evidence of even more severe conditions." *Divers v. Metropolitan Jewish Health Systems*, 2009 WL 103703 at *19 (E.D.N.Y. Jan. 14, 2009).

For the reasons stated above, the judgment the district court is hereby AFFIRMED.