**Leota KENT, Plaintiff,**

v.

**GENERAL MOTORS REGIONAL PERSONNEL CENTER–EAST REGION, Defendant.**

No. 96–CV–841C.

United States District Court, W.D. New York.

Oct. 31, 2001.

Christina A. Agola, Webster, NY, for Plaintiff.

Brown and Hutchinson, Rochester, NY (T. Andrew Brown, of Counsel), for Defendant.

## INTRODUCTION

CURTIN, District Judge.

Plaintiff brings this action for damages and equitable relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Article 15 of the New York Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, alleging employment discrimination based on race. Defendant has moved for judgment on the pleadings and for summary judgment pursuant to Rules 56(c) and 12(c) of the Federal Rules of Civil Procedure. Item 52. Oral argument of the motion was heard by the undersigned on September 21, 2001. For the following reasons, defendant's motion is granted.

## BACKGROUND

Plaintiff is an African–American woman. She began her employment with defendant General Motors ("GM") in May 1976 as a clerk/typist, and eventually attained the

position of Senior Clerk, Level 4, at GM's Regional Personnel Center–East Region.

On October 21, 1994, plaintiff filed a dual administrative charge with both the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging as follows:

> On May 26, 1994, I became aware that a white individual, Debbie Fehringer, was promoted into the position of Level 5 clerk/typist. It has been [GM]'s practice to post openings. [GM]'s Dianne Ende stated that it was not necessary to post this job explaining that Ms. Fehringer was given the promotion because she had been doing 5th Level work and because she was "aggressive."

> On information and belief, Debbie Fehringer was given the opportunity to learn about 5th Level work. I was not. I believe that in many regards I was more qualified than Ms. Fehringer including that I performed my duties with a lot fewer mistakes.

Item 54, Ex. B. Plaintiff stated her belief that the position was not posted because GM wanted to place a White person in the 5th Level position, and claimed GM denied her the opportunity for promotion and equal terms, conditions, and privilege of employment because of her race. *Id.*

On January 29, 1996, after investigation, the DHR dismissed the charge for lack of probable cause. The DHR found as follows:

> [Plaintiff] was hired on or about May 30, 1976. Currently she holds the position of Senior Clerk, 4PO2, and is assigned to the Eastern Regional Personnel Center. [GM] recognizes two types of promotions, one for proficiency which is

based on achievement and work performance over an extended period of time and the other is a bona fide promotion based on the availability of an opening to fill. Policies and practices have been established governing both types of promotion. On or about May 26, 1994 a Caucasian co-worker was given a proficiency promotion to Personnel Specialist Claims Processor, 5P14. The personnel records reviewed show [GM] followed established procedures for this type of promotion. [GM]'s supervisors advised [plaintiff] how she could earn a proficiency promotion and provided her with assistance. [Plaintiff] acknowledged she was provided with additional level 5 work when it was available. The record shows [plaintiff] was afforded the same opportunity as Caucasian employees for a proficiency promotion. Additionally, the investigation disclosed that a Black employee was awarded a bona fide promotion in April 1994 to fill a vacancy. The investigation did not reveal any evidence to suggest [plaintiff] had been discriminated against.

Item 54, Ex. C.

On September 11, 1996, upon examination of the record and according "substantial weight" to the DHR's findings, the EEOC issued a determination and notice of right to sue. Item 54, Ex. L. The EEOC found no evidence to sustain a violation of Title VII, and advised plaintiff of her right to file a civil action in federal court within 90 days of receipt of the notice.[1]

Plaintiff filed this Title VII action *pro se* on December 12, 1996 against GM and her supervisor, Dianne Ende, asserting the same claim she alleged in her DHR/EEOC charge. Defendants moved to dismiss the

---

1. Attached to the original complaint is a copy of an envelope sent by certified mail postmarked September 13, 1996, indicating plaintiff's receipt on that date of the notice of right to sue.

complaint against Ms. Ende in her individual capacity (Items 5 and 11), and filed an answer (Item 9) asserting several affirmative defenses to the complaint against GM. By order dated June 6, 1997, this court granted the motion to dismiss the action against Ms. Ende. Item 17; *see also* Item 15.

Plaintiff subsequently retained counsel and filed an amended complaint upon consent, containing additional factual allegations pertaining to the denial of promotion claim. Plaintiff also added a retaliation claim, alleging that when she complained about the promotion of Ms. Fehringer, Ms. Ende "retaliated against her by treating her in a negative manner, both personally and professionally ...," causing her "to develop emotional and psychological problems that ultimately led to her leaving work on total disability in or around December 1994." Item 23, ¶¶ 20, 21. She seeks reinstatement, back pay, compensatory and punitive damages, and attorney's fees pursuant to Title VII and the New York Human Rights Law.

At the close of discovery, GM filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), and for summary judgment pursuant to Fed.R.Civ.P. 56(c). As grounds for judgment on the pleadings, GM contends that plaintiff's federal claims based on conduct that occurred more than 300 days prior to the filing of the administrative charge, and plaintiff's state claims based on conduct that occurred more than three years prior to the filing of this action, should be dismissed as untimely, and that plaintiff's retaliation claim should be dismissed for failure to raise it in her administrative charge. As grounds for summary judgment, GM contends that plaintiff has failed as a matter of law to establish her federal or state claims for denial of promotion or retalia-

tion. Item 52; *see also* Item 56. Each of these grounds is discussed in turn below.

## DISCUSSION

### I. Judgment on the Pleadings

■■■ A motion to dismiss filed after the close of pleadings is properly brought as a motion for judgment on the pleadings under Rule 12(c), which provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c); *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001). The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim. *Id.* at 126. In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). The court will not dismiss the claim unless it is satisfied the plaintiff cannot state any set of facts that would entitle her to relief. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

In support of its request for judgment on the pleadings, GM contends that all discriminatory acts alleged by plaintiff to be in violation of Title VII that occurred before December 26, 1993 (*i.e.*, more than 300 days before plaintiff filed her adminis-

trative charge), and all acts alleged to be in violation of New York Human Rights Law that occurred before December 12, 1993 (*i.e.*, more than three years before plaintiff commenced this action), are time-barred. GM also seeks judgment on the pleadings dismissing plaintiff's retaliation claim for failure to raise it in her administrative charge.

■ Title VII requires a claimant to file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency (as in this case), within 300 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e-5(e)(1); *Quinn v. Green Tree Credit Corporation,* 159 F.3d 759, 765 (2d Cir.1998). This requirement functions as a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Thus, only events that occurred during the 300-day period prior to the filing of the administrative charge-in this case, commencing on December 26, 1993-are actionable under Title VII, unless the period has somehow been equitably tolled or extended. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712-13 (2d Cir.1996).

In contrast to her Title VII claim, plaintiff's cause of action under New York's Human Rights Law is governed by a three-year statute of limitations, measured from the filing of the action in court. *See* N.Y.C.P.L.R. § 214(2); *Van Zant,* 80 F.3d at 714. The action was filed on December 12, 1996. Therefore, for purposes of the state law cause of action, any incidents of discrimination alleged to have occurred prior to December 12, 1993 would ordinarily be time-barred, unless the period is tolled or extended. *Quinn,* 159 F.3d at 765.

■ Plaintiff contends these limitations periods are subject to extension under the "continuing violation" exception. Under this exception, a plaintiff who files a timely administrative charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been time-barred. *See, e.g., Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997).

■ Application of the continuing violation exception is usually reserved for cases in which there is evidence of specific discriminatory practices or mechanisms, such as the repeated use of discriminatory seniority lists or employment tests. *See Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993) (citing cases), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Discrete incidents of discrimination that are unrelated to an identifiable policy or practice, on the other hand, will not ordinarily amount to a continuing violation. *Lightfoot,* 110 F.3d at 907. However, even in the absence of a specific discriminatory policy or mechanism, courts in the Second Circuit have applied the continuing violation exception "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant,* 80 F.3d at 713.

■ In this case, plaintiff asserts a "pattern of discriminatory conduct beginning on or around March of 1990 and extending

until December of 1995 that [GM] permitted to continue unremedied." Item 62, p. 7. In support of this assertion, plaintiff refers to December 1990 and December 1992 performance reviews for herself and Ms. Fehringer which, according to plaintiff, show that white employees (including Ms. Fehringer) were afforded training opportunities which were denied to African-American employees (including plaintiff). *See* Plaintiff's Aff.,. Item 64, Exs. A, C. Plaintiff also refers to a May 5, 1992 letter to Ms. P.R. Mansell, GM's Regional Personnel Center Director, in which plaintiff and several of her co-workers complained about denial of promotions, training, education, and other career opportunities to minorities. *Id.,* Ex. E.

Even accepting the allegations in the amended complaint as true and drawing all inferences in plaintiff's favor, I find that plaintiff has stated insufficient facts to invoke the continuing violation exception to the pertinent limitations periods. The acts plaintiff alleges to have occurred outside the limitations periods simply are not sufficiently related or continuous in time with the timely acts she has alleged to amount to a discriminatory policy or practice. The documentation submitted to the court suggests at most that, in December 1990, Ms. Fehringer was given the opportunity to attend a time management seminar and a "Displaywrite 36" training course (Item 64, Ex. C), but no such opportunity was provided to plaintiff. *Id.,* Ex. A. This is the only specific evidence put forward by plaintiff from which a reasonable inference could be drawn that plaintiff was denied training opportunities, or suffered any other discriminatory treatment, prior to Ms. Fehringer's promotion in May 1994. The May 1992 letter to Ms. Mansell, referenced above, provides nothing more than additional conclusory allegations of discrimination, unsupported by any statistical data, corroborating affidavits, or other proof. In any event, the record shows that Ms. Mansell wrote a responding letter on September 25, 1992, in which she acknowledged the employees' concerns and explained the reasons for the "extremely limited" promotional opportunities at the Regional Personnel Center where plaintiff worked (*i.e.,* reorganization and reduction of staff). *Id.,* Ex.G.

Plaintiff's reliance on the continuing violation exception fails for another reason-she did not assert that theory in the administrative proceedings. *See Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). In this regard, a district court only has jurisdiction to hear claims that either are included in the charge filed with the administrative agency or are based on conduct occurring subsequent to the filing of the charge which is "reasonably related" to that alleged in the charge. *Butts v. City of New York Department of Housing Preservation and Development,* 990 F.2d 1397, 1401 (2d Cir. 1993). This exhaustion requirement is an essential element of Title VII's statutory scheme, *see Stewart v. United States Immigration and Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985) ("the purpose of the [Title VII] exhaustion requirement . . . is to give the administrative agency the opportunity to investigate, mediate, and take remedial action"), and applies to a plaintiff's assertion of the continuing violation theory as a means of extending the 300–day limitations period as well as substantive claims raised for the first time in the civil action. *Miller,* 755 F.2d at 25 (continuing violation must be clearly asserted both in administrative filing and in civil complaint).

In *Butts,* the Second Circuit identified several situations in which claims not

alleged in an administrative charge are considered "sufficiently related to the allegations in the charge that it would be unfair ... to bar such claims in a civil action." *Butts*, 990 F.2d at 1402. First, an employee can bring a claim in a civil action that was not raised in the administrative charge "where the conduct complained of would fall 'within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)). This flexibility is based on the recognition that most administrative charges are filled out by employees without the benefit of counsel and that the primary purpose of the charge is to alert the agency to the alleged discrimination. *Butts*, 990 F.2d at 1402. Thus, the district court must consider whether the facts underlying the new claim are sufficiently similar to those alleged in the administrative charge such that the new claim would reasonably have flowed from the agency's investigation. *See Gomes v. Avco Corp.*, 964 F.2d 1330, 1334–35 (2d Cir.1992); *Spurlock v. NYNEX*, 949 F.Supp. 1022, 1027 (W.D.N.Y.1996).

 Second, an employee can bring a new claim if it alleges retaliation by the employer for filing the discrimination charge. *Butts*, 990 F.2d at 1402 (citing cases). This relaxation of the exhaustion requirement is "based on the close connection of the retaliatory act to both the initial discriminatory act and the filing of the charge itself." *Id.* As explained by the Second Circuit:

Due to the very nature of retaliation, the principle [sic] benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation. Indeed, requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination.

*Id.* Third, an employee can bring a new claim if the civil complaint alleges further incidents of discrimination carried out in precisely the manner alleged in the EEOC charge. *Id.* at 1402–03.

 In this case, as discussed above, plaintiff's administrative charge was based entirely on the May 1994 promotion of Ms. Fehringer from Level 4 to Level 5. The charge included the allegation that Ms. Fehringer "was given the opportunity to learn about 5th Level work ...," but plaintiff was not. Item 54, Ex. B. There is nothing contained in the record before this court to suggest that plaintiff's claim of denial of training opportunities in 1990, or any other specific discriminatory act now alleged to have occurred prior to May of 1994, would reasonably have flowed from the DHR's or EEOC's investigation of the facts alleged in the administrative charge. *See, e.g.*, "Statement of Facts," Item 64, Ex. D; "Determination and Order," Item 54, Ex. C.[2]

 Plaintiff also alleges in her amended complaint that, "[b]ecause [she] had complained about the discriminatory promotion of Ms. Fehringer, her supervisor retaliated against her by treating her

---

**2.** Indeed, plaintiff's amended complaint contains no specific allegations of discriminatory conduct occurring prior to May 1994. Instead, plaintiff alleges generally that, "[f]rom the beginning of her employment at the General Motors facility on Sheridan Drive in Amherst, [plaintiff] and other black employees were denied equal opportunity in the terms and conditions of their employment on the basis of their race." Item 23, ¶ 11.

in a negative manner, both personally and professionally." Item 23, ¶ 20. She further alleges that GM "retaliated against [her] for ... engaging in protected Title VII activity ...." *Id.*, ¶ 28. These allegations fall squarely within the second *Butts* exception to the exhaustion requirement allowing the plaintiff to bring a new claim in the federal civil action if it alleges retaliation by the employer for filing the administrative charge. *Butts*, 990 F.2d at 1402.

Accordingly, defendant's motion for judgment on the pleadings is granted to the extent it seeks dismissal as time-barred plaintiff's Title VII claims based on conduct that occurred before December 26, 1993 (*i.e.*, more than 300 days before plaintiff filed her administrative charge), and plaintiff's New York Human Rights Law claims based on conduct that occurred before December 12, 1993 (*i.e.*, more than three years before plaintiff commenced this action). Defendant's motion is denied to the extent it seeks judgment on the pleadings dismissing plaintiff's retaliation claim.

## II. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, at which point the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 ..., that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

As explained by the Second Circuit in *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219 (2d Cir. 1994):

[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.

... [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Id.* at 1224. In this case, the substantive law is Title VII.[3]

## A. Title VII

Title VII prohibits an employer from discharging or otherwise discriminating against an individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a). Title VII further prohibits an employer from retaliating against an employee "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.2000e–3(a). Where there is no direct evidence of discrimination, courts evaluate Title VII claims under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This analysis applies to both discrimination and retaliation claims. *Sumner v. United States Postal Service,* 899 F.2d 203, 209 (2d Cir. 1990).

Under the *McDonnell Douglas* analysis, the plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. This burden is "minimal." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53(2d Cir.2001) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Once established, the plaintiff's *prima facie* case creates a rebuttable presumption of discrimination, *Hicks,* 509 U.S. at 506, 113 S.Ct. 2742, and the burden shifts to the defendant to articulate some legitimate,

non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

The employer need not prove by a preponderance of the evidence that its actions were motivated by the proffered non-discriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. The "employer's burden is one of production of evidence rather than one of persuasion." *Id.* Should the defendant carry this burden, the presumption established by plaintiff's *prima facie* case is rebutted, and the burden shifts back to the plaintiff to establish that there is a material issue of fact as to whether the employer's proffered reason was a mere pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### 1. Denial of Promotion

 Defendant contends plaintiff has failed to establish a *prima facie* case of discriminatory denial of promotion. In order to establish a *prima facie* case of employment discrimination in promotion practices based on race under Title VII, plaintiff must show that (1) she belongs to a protected class, (2) she was qualified and applied for the position, (3) she was denied the position, and (4) the denial occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 (2d Cir. 2000). According to defendant, plaintiff cannot meet her "minimal" *prima facie* burden because she was not qualified for the type of promotion attained by Ms. Fehringer, and was not denied the pro-

---

**3.** Claims brought under section 296 of the Human Rights Law are generally analyzed under the same standards applicable to claims brought under Title VII. *See, e.g., Reed*

*v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir.1996); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995).

motion under circumstances giving rise to an inference of discrimination.

As defendant explains, GM utilizes two types of promotions: "proficiency" promotions and "bona fide" promotions. A "bona fide" promotion involves filling a job vacancy or assigning a replacement candidate to a specific job. The job opening is posted, and employees meeting minimum qualifications are invited to apply. The promotion is considered to be competitive, meaning applicants compete against one another for identifiable positions, and the successful candidate is chosen to the exclusion of the others. *See* Item 53, Ende Aff., ¶¶ 3–6.

A "proficiency" promotion does not represent an identifiable position, but is instead awarded in recognition of the employee's demonstrated ability to perform while taking on a higher level of work. Under GM's policies and procedures, supervisors and managers have the opportunity to nominate employees for proficiency promotions. The nominations are reviewed by GM's Human Resources Management Committee, which in turn makes a recommendation to Personnel Administration for approval or denial of the promotion. There are no posting or application procedures, and the promotion is considered non-competitive and non-exclusive. *See* Item 53, ¶¶ 7–9.

It is not disputed in this case that Ms. Fehringer's May 1994 promotion was a proficiency promotion. As set forth in the affidavit of Dianne Ende, Ms. Fehringer was promoted on the basis of the recommendation of one of her supervisors, Ernie James (a Black male), in recognition of her demonstrated competence, experience, and ability. Ende Aff., Item 58, ¶ 11. The promotion did not involve an identifiable, posted job opening for which candidates could compete, or even apply.

In addition, the record before the court indicates that plaintiff herself received a proficiency promotion to her job as Senior Clerk, Level 4, in March 1983. Item 54, Exs. I and J. When she became aware of Ms. Fehringer's promotion in May 1994, plaintiff was advised by Ms. Ende and Paul Schnobrick, GM's East Region Director of Personnel, that she could attain a similar proficiency promotion by taking on additional, higher level work and excelling at it. Item 58, ¶ 15; *see also* Schnobrick Dep., Item 54, Ex. G, pp. 33–35. Plaintiff initially accepted and performed the higher level work, and was provided assistance and training. However, after a short period of time she returned to merely performing her Level 4 work, and did not attain a proficiency promotion. Item 58, ¶ 16; Item 54, Ex. G, pp. 38–40.

Furthermore, it is beyond dispute that at the time of Ms. Fehringer's promotion, GM was in the process of downsizing and consolidating its internal Employee Benefits operations, resulting in the elimination of positions in the Workers Compensation Department where plaintiff worked. *See, e.g.,* Item 54, Ex. H; *see also* Item 58, ¶¶ 17–19. As a result, only two promotions from Level 4 to Level 5 were made during 1994–Ms. Fehringer's proficiency promotion, and the bona fide promotion of Thelma Taborn, an African–American woman. In the absence of any credible evidence to provide a reasonable basis for a trier of fact to conclude that African–American employees were not given the same opportunities as White employees for the training, education, and experience necessary to obtain proficiency promotions, plaintiff cannot meet even the minimal *prima facie* burden of showing that Ms. Fehringer's May 1994 promotion occurred under circumstances giving rise to an inference of discrimination.

However, even if the record could be viewed as sufficient to withstand summary judgment at the *prima facie* stage of plaintiff's denial of promotion claim, defendant has articulated legitimate, non-discriminatory reasons for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. As discussed above, the evidence demonstrates that over a period of years prior to May 1994, GM was in the process of outsourcing its Workers' Compensation functions, resulting in limited promotions (proficiency or bona fide) during the relevant time period. In addition, despite being provided the opportunity and training to do so, plaintiff did not demonstrate the additional initiative and ability necessary to obtain a proficiency promotion from Level 4 to Level 5.

This evidence provides a reasonable basis for the trier of fact to conclude that GM had a legitimate, non-discriminatory reason for promoting Ms. Fehringer instead of plaintiff. Accordingly, the summary judgment burden shifts back to plaintiff to establish the existence of a material issue of fact as to whether the proffered reason was a mere pretext for discrimination. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *see also Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir.2000). In doing so, plaintiff must produce "not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1994)). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, '[i]t is

not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.'" *Weinstock*, 224 F.3d at 42 (quoting *Hicks*, 509 U.S. at 519, 113 S.Ct. 2742).

Upon review of the evidence of record in this case, taken as a whole and drawing reasonable inferences against the moving party, I find no support for a rational finding that defendant's proffered reasons for promoting Ms. Fehringer instead of plaintiff were a pretext for discrimination. The undisputed facts outlined above demonstrate that Ms. Fehringer's proficiency promotion was based on her high level of achievement and performance. It was non-exclusive-that is, it was not awarded based on competition for a posted position, to the exclusion of other employees. On the other hand, plaintiff had not demonstrated the same qualities and qualifications for proficiency promotion from Level 4 to Level 5. When given the opportunity to do so, she was unable to sustain her performance of higher level work for more than a brief period of time. In addition, during the pertinent time period GM was in the process of eliminating its Workers' Compensation Department, resulting in limited opportunities for promotion.

In response to this showing, plaintiff has come forward with no credible evidence of discriminatory conduct occurring within the relevant time period from which a reasonable factfinder could conclude that plaintiff was denied promotion, or the training opportunities necessary to attain a promotion, because of her race. Indeed, after a full opportunity for discovery during five years of litigation, and more than seven years after the occurrence of the alleged discriminatory act, the only evidence plaintiff can point to in support of her claims is a somewhat equivocal 1990 performance evaluation for Ms. Fehringer and a self-serving 1992 letter, referring to

conduct outside the pertinent statutes of limitations and beyond the reach of this action. This showing is woefully insufficient to support a rational jury finding that a triable issue of fact exists with respect to the pretextual nature of GM's stated legitimate, non-discriminatory reason for promoting Ms. Fehringer instead of plaintiff.

Based on this analysis, I find that plaintiff has failed to come forward with enough evidence either to establish a *prima facie* case of discriminatory denial of promotion, or to raise specific factual issues as to whether GM's proffered explanation for the challenged promotion was a pretext for discrimination. Accordingly, defendant is entitled to summary judgment dismissing plaintiff's denial of promotion claim.

## 2. Retaliation

GM also seeks summary judgment dismissing plaintiff's retaliation claim. Retaliation claims under Title VII are likewise scrutinized under the *McDonnell Douglas* three-step burden shifting analysis outlined above. *See, e.g., Quinn*, 159 F.3d at 768. First, the plaintiff must make out a *prima facie* case of retaliation. Second, the defendant then has the burden of articulating a legitimate, non-retaliatory reason for its actions. Third, if the defendant meets its burden, plaintiff must adduce evidence sufficient to raise a fact issue as to whether the employer's reason was merely a pretext for retaliation. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308–09 (2d Cir.1995). To establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant, (2) an employment action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse employment action. *United States v. New York City Transit Authority*, 97 F.3d 672, 677 (2d Cir.1996).

As noted above, plaintiff filed her administrative charge in October 1994, resulting in DHR and EEOC investigations of which GM had full knowledge. *See, e.g.,* Response to Charge, Item 64, Ex. D. At her deposition, plaintiff testified about several incidents which she claims constitute adverse employment actions. For example, she testified that after she filed the charge she was excluded from a meeting (Item 54, Ex. E, p. 119), subjected to hostile and insulting remarks by co-workers (*id.*, pp. 127–28), ignored by her co-workers (*id.*, p. 151), denied a raise (*id.*, p. 179), and was not informed about the opportunity to apply for a job opening (*id.*, pp. 196–98).

As the Second Circuit has emphasized, " 'not every unpleasant matter short of [discharge or demotion] creates a cause of action' " for retaliation. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997) (citation omitted). Rather, a plaintiff suffers an adverse employment action if she "endures a 'materially adverse change in the terms and conditions of employment.' " *Richardson v. New York State Dept. of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir.1999) (citation omitted). Plaintiff has not put forth any evidence, beyond her unsubstantiated, conclusory deposition testimony, to raise a genuine issue of fact as to whether being excluded from a meeting, enduring insulting remarks, being ignored by co-workers, or not being told about a job opening caused a materially adverse change in the terms and conditions of her employment.

There is some authority for finding that an employer's denial of a duly earned raise constitutes an adverse employment action for the purpose of establishing a *prima facie* retaliation claim. *See, e.g., Cooper v. Morgenthau*, 2001 WL 868003, at *8 (S.D.N.Y. July 31, 2001).

However, as the court in *Cooper* pointed out, in order to establish indirectly-that is, without direct evidence-a causal connection between the protected activity and the denial of a raise, the plaintiff must show "that the protected activity was followed closely in time" by the denial. *Id.* (citing *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)). In *Cooper*, a seven-month lapse between the filing of the EEOC complaint and the denial of a pay raise was found to be "too great a time period to infer a causal connection." *Cooper*, 2001 WL 868003, at *8 (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84–85 (2d Cir.1990) (three-and-one-half-month interval between protected activity and adverse action, without other evidence, is insufficient to demonstrate causation and survive defendant's motion for summary judgment); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (four-month interval between protected activity and termination, by itself, insufficient to justify inference of causation); *James v. Newsweek*, 1999 WL 796173, at *15 (S.D.N.Y. September 30, 1999) (no causation where "there was at least a four-month gap between the protected activity and the adverse actions"), *aff'd*, 213 F.3d 626, 2000 WL 536409 (2d Cir.), *cert. denied*, 531 U.S. 926, 121 S.Ct. 303, 148 L.Ed.2d 243 (2000)).

■ In this case, plaintiff testified at her deposition that, sometime in the summer of 1995, Ms. Ende informed her that she would "receive[ ] a merit of $500" instead of a raise, "because [plaintiff] was above market value." Item 54, Ex. E, p. 179; *see also id.* at p. 181. Even if this testimony could somehow be viewed by a rational factfinder as evidence of a materi-

ally adverse change in the terms and conditions of employment, standing alone it is too remote in time from the October 1994 filing of the DHR/EEOC charge to infer causation. *See Cooper*, 2001 WL 868003, at *8.

■ The same is true with respect to plaintiff's claim that she was forced to take disability leave in January 1995 for depression, and has since been denied the opportunity to return to work despite medical clearance to do so. She contends that she was cleared to return to work as early as April or May 1995. Item 64, ¶¶ 43–44. However, the documentation submitted in support of this contention indicates that GM was not advised of plaintiff's medical clearance until October 7, 1996 (*see id.*, ¶ 45 & Ex. M), nearly two full years after she filed her administrative charges.[4]

In any event, plaintiff has put forward nothing other than her deposition testimony to suggest a causal relationship between her complaints about Ms. Fehringer's promotion and her failure to obtain redeployment. She testified she had no specific knowledge of any available positions for which she would be qualified subsequent to the elimination of the Workers' Compensation Department, but that it was "common sense" to assume there were jobs at GM that she could do. Item 54, Ex. E, pp. 434–35. This otherwise unsupported testimony falls far short of the proof required at the summary judgment stage to suggest that plaintiff's complaints about Ms. Fehringer's promotion had anything whatsoever to do with GM's failure to redeploy her after her disability leave. In such a case, where the court is presented with nothing more than conclusory allegations of retali-

---

**4.** Indeed, the documentation submitted by plaintiff in support of her contention that she was medically cleared to return to work in May 1995 actually refers to Patricia Austin, one of plaintiff's co-workers. Item 64, Ex. L.

ation in response to a defendant's well-supported summary judgment motion, "[t]here [is] no material issue of fact for a jury to consider." *Van Zant,* 80 F.3d at 714.

Accordingly, I find that plaintiff has failed to come forward with enough evidence to support a jury verdict in her favor on her retaliation claim, even at the *prima facie* stage. Defendant is therefore entitled to summary judgment dismissing plaintiff's retaliation claim.

### B. New York Human Rights Law

Because claims brought under section 296 of the New York Human Rights Law are analyzed under the same standards applicable to claims brought under Title VII, *see* cases cited in note 3, *infra,* defendant's motion for summary judgment is also granted to the extent it seeks dismissal of plaintiff's state law employment discrimination claims.

### C. Punitive Damages

Finally, because I find it appropriate to enter summary judgment in favor of defendant with respect to liability, defendant's motion is likewise granted to the extent it seeks dismissal of plaintiff's claims for punitive damages.

### *CONCLUSION*

Based on the foregoing, defendant's motion for judgment on the pleadings (Item 52) is granted in part and denied in part. Defendant's motion for summary judgment (Item 52) is granted in its entirety, and the case is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.